**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SHEILA HELMERT, WILMA BROWN, and                          PLAINTIFFS
LORI WEST, on behalf of themselves and others
similarly situated

v.                                    No. 4:08CV00342 JLH

BUTTERBALL, LLC                                           DEFENDANT

　＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊

ROXIE GARNER, ROY GARNER, JASON                          PLAINTIFFS
FOSTER, MIGUEL ANGUIANO ARAUJO,
CHRISTOPHER SMITH, JOHN SNARR,
and JAMES ROLLINS, on behalf of
themselves and others similarly situated

v.                                    No. 4:10CV01025 JLH

BUTTERBALL, LLC,
and GARY R. LENAGHAN                                      DEFENDANTS

**OPINION AND ORDER**

The parties have filed cross motions for partial summary judgment in the related cases of

*Helmert v. Butterball*, No. 4:08CV00342 JLH, and *Garner v. Butterball*, No. 4:10CV01025 JLH.

For the following reasons, the plaintiffs' motion for partial summary judgment is granted in part, and

the defendants' motion for partial summary judgment is denied.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable

to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla*

*v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).  The party moving for summary

judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.' " *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. The existence of merely a scintilla of evidence in support of a party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for that party. *Id*. at 252, 106 S. Ct. at 2512.

## II.

Under the Fair Labor Standards Act, an employer must pay its employees a minimum wage for forty hours of work each week. 29 U.S.C. § 206(a) (2006). For any hours worked in excess of forty hours per week, the employer must pay its employees "at a rate not less than one and one-half times the regular rate at which he is employed." *Id*. § 207(a)(1). The FLSA does not define "work" or "workweek," and as a result, courts have been left to decide whether particular activities engaged in by employees constitute "work" and, if so, whether an employer has violated the FLSA by failing to compensate its employees for those activities. To define the term "work" as it is used in the Act,

> [t]he United States Supreme Court originally stated that employees subject to the [FLSA] must be paid for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." (*Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U. S. 590[, 64 S. Ct. 698, 88 L. Ed. 949] (1944)) Subsequently, the Court ruled that there need be no exertion at all and that all hours are hours worked which the employee is required to give his

employer . . . . (*Armour & Co. v. Wantock*, 323 U.S. 126[, 65 S. Ct. 165, 89 L. Ed. 118] (1944); *Skidmore v. Swift*, 323 U.S. 134[, 65 S. Ct. 161, 89 L. Ed. 124] (1944)).

29 C.F.R. § 785.7 (2011).  In *Anderson v. Mount Clemens Pottery Co.*, the Court defined the statutory workweek as "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace," and held that employers are required to compensate employees for that time.  328 U.S. 680, 690-91, 66 S. Ct. 1187, 1194, 90 L. Ed. 1515 (1946) (holding that the time necessarily spent by employees walking from timeclocks near the factory entrance gate to their workstations was part of the statutory workweek and, thus, compensable).

In the year following *Mount Clemens*, Congress passed the Portal-to-Portal Act, amending certain provisions of the FLSA and narrowing the coverage of the FLSA "by excepting two activities that had been treated as compensable under [prior caselaw]: walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity."  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 27, 126 S. Ct. 514, 520, 163 L. Ed. 2d 288 (2005); *see* 29 U.S.C. § 254(a).  "Other than its express exceptions for travel to and from the location of the employee's 'principal activity,' and for activities that are preliminary or postliminary to that principal activity, the Portal-to-Portal Act [did] not . . . change [the] Court's earlier descriptions of the terms 'work' and 'workweek,' or . . . define the term 'workday.' "  *Alvarez*, 546 U.S. at 28, 126 S. Ct. at 520; *see also* 29 C.F.R. § 785.7 ("The Portal-to-Portal Act did not change the rule except to provide an exception for preliminary and postliminary activities.").

Accordingly, to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday

and before he ceases the performance of the last principal activity on a particular workday, the provisions of [the Portal-to-Portal Act] have no application.

29 C.F.R. § 790.6(a).

Under the FLSA, the "workday" is "the period between the commencement and completion on the same workday of an employee's principal activity or activities." *Id.* § 790.6(b). "It includes all time within that period whether or not the employee engages in work throughout all of that period." *Id.* The FLSA regulations define "principal activities" as those which the employee is "employed to perform" or those integral and indispensable to a principal activity. *Id.* § 790.8.

> If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a "preliminary" or "postliminary" activity rather than a principal part of the activity.

*Id.* § 785.24(c); *see also Steiner v. Mitchell*, 350 U.S. 247, 252-56, 76 S. Ct. 330, 333-35, 100 L. Ed. 267 (1956) (changing clothes and taking showers in a battery plant, where the manufacturing process involved the extensive use of toxic materials, was an integral part of the employees' jobs); *Mitchell v. King Packing Co.*, 350 U.S. 260, 263, 76 S. Ct. 337, 339, 100 L. Ed. 282 (1956) (knife-sharpening activities of workmen in a meatpacking plant before and after their scheduled shift time were integral and indispensable to their work). In other words, "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.' " *Alvarez*, 546 U.S. at 37, 126 S. Ct. at 525. "Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked . . . ." 29 C.F.R. § 790.6; *see Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591 (2d

Cir. 2007) (noting that "employees are paid for a continuous workday—which begins with the first principal activity and ends with the last").

In light of this understanding of what constitutes compensable work under the FLSA, the relevant regulations, and case law, the Court will address each of the cross motions for partial summary judgment in turn.

## III.

In their motion for partial summary judgment, the plaintiffs contend that the undisputed facts establish that donning and doffing smocks at Butterball's Ozark and Huntsville plants are integral and indispensable to the principal duties of the production employees at those plants.[1]

> "[A]ctivities performed either before or after the regular work shift," the Supreme Court has noted, are compensable "if those activities are an integral and indispensable part of the principal activities." *Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956); *see also Mitchell v. King Packing Co.,* 350 U.S. 260, 261, 76 S.Ct. 337, 100 L.Ed. 282 (1956); 29 C.F.R. § 790.7(h) (1999) ("[A]n activity which is a 'preliminary' or 'postliminary' activity under one set of circumstances may be a principal activity under other conditions.").
>
> The Supreme Court's approach to this "principal," "integral and indispensable" duty question is context-specific. To be "integral and indispensable," an activity must be necessary to the principal work performed and done for the benefit of the employer. *See Barrentine v. Arkansas-Best Freight Sys., Inc.,* 750 F.2d 47, 50 (8th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985); *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 398 (5th Cir.1976).

*Alvarez v. IBP, Inc.*, 339 F.3d 894, 902-03 (9th Cir. 2003), *aff'd,* 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005).   Courts generally consider three factors to determine whether activities performed before or after the regular work shift are integral and indispensable: (1) whether the

---

[1]The employees don and doff several items of personal protective equipment, including hairnets, ear plugs, boots, hard hats, bump caps, arm guards, belly guards, gloves, and safety glasses, but the motion for partial summary judgment addresses only smocks.

activity is required by the employer, (2) whether the activity is necessary for the employee to perform the employee's job duties, and (3) whether the activity primarily benefits the employer. *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910-12 (9th Cir. 2004); *Dunlop*, 527 F.2d at 400-01.

Consideration of these factors necessarily involves factual determinations. *See Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 265 (5th Cir. 1998) ("Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence."); *Ruffino v. North Slope Borough*, No. 92-36866, 1994 WL 201174, at *3 (9th Cir. May 23, 1994) ("[W]hether time is spent predominantly for the employer's benefit . . . is a question of fact . . . .") (internal citations omitted); *Rodriguez v. Carey Intern., Inc.*, Nos. 03-22442-CIV, 03-22752-CIV, 03-22962-CIV, 03-22963-CIV, 03-23211-CIV, 04-21074-CIV, 04-21104-CIV, 2004 WL 5582173, at *4 (S.D. Fla. Sept. 15, 2004) (refusing to grant judgment as a matter of law on the compensability of certain activities because "[t]here is a factual question as to the regularity of the activities, whether the employer required some of these actions, or whether the employee performed them for his own benefit"); *Jerzak v. City of South Bend*, 996 F. Supp. 840, 847 (N.D. Ind. 1998) (stating that whether an activity was reasonably necessary was a question of fact for the jury).

As with any other type of case, however, when the material facts are not in dispute, a court may grant summary judgment on the issue of whether a particular activity is integral and indispensable to the employees' principal job duties.[2] *See Ballaris*, 370 F.3d at 910 (the nature of

---

[2]The plaintiffs argue that compensability is for the Court, not the jury, to decide, whereas Butterball argues that compensability must be submitted to the jury. To the extent that either party argues that the issue of compensability under the FLSA is somehow exempt from the

the employees' duties is a question of fact and the application of the FLSA to those duties is a

question of law, but when the nature of the duties is undisputed, summary judgment may be granted);

*Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1177 (D. Kan. 2011) (noting that some courts

have "concluded as a matter of law that donning and doffing activities are integral and indispensable

under appropriate undisputed facts"); *Treece v. City of Little Rock, Ark.*, 923 F. Supp. 1122, 1127

(E.D. Ark. 1996) (granting summary judgment for plaintiffs and finding that time spent by canine

officers in caring for and cleaning police equipment, such as uniforms and guns, was compensable

to the extent it is not *de minimis*).

        In this case, the parties have stipulated to the relevant facts regarding the donning and doffing

of smocks. The smocks at issue are single-layered cloth, white shirts that tie in the front.  They have

three-quarter length sleeves, are permeable, and provide no insulation.  Before the shift begins,  a

production employee must obtain a clean, laundered smock from the supply window.  An employee

is not allowed to wear a smock that was worn on the previous work day, even if the smock is not

noticeably soiled.  During each break, the employee stores the smock on a hook and dons the same

smock again when the break is concluded, unless the smock is soiled enough to warrant obtaining

a new one.  At the end of each shift, the employee deposits the used smock in a bin located near the

exits to the production areas.

        Butterball's employee handbook requires production employees to comply with Butterball's

Good Manufacturing Processes, which are used to ensure food safety and the quality of Butterball's

---

ordinary rules of civil procedure, those arguments are rejected.  No authority supports the
proposition that the Court may decide disputed issues of material fact in an FLSA action in
which a party has made a timely request for a jury trial, nor does any authority support the
proposition that the Court may not grant summary judgment when there is no genuine issue of
material fact.

products.  As they relate to smocks, the Good Manufacturing Processes generally state that each employee must obtain a clean smock from the supply room on a daily basis, may not wear the smock outside the plant or in restrooms, and must turn in the smock after each shift.  Butterball's training materials state that "[s]mocks, hairnets, and the other forms of outerwear are necessary to prevent both contamination and foreign objects from getting into our product.  Our product must be kept clean and must not be contaminated with any foreign material." (Pls.' Stip. Facts ¶ 56, *Helmert* ECF No. 361.)  In deposition testimony, a number of Butterball managers at the Ozark and Huntsville plants stated that smocks are worn primarily for food safety. (*Id.* ¶¶ 57, 59, 61, and 62.)[3]

Based on these facts, the plaintiffs argue that there is no genuine issue of material fact as to whether donning and doffing the smocks are integral and indispensable to the principal job duties of Butterball's production employees.  In other words, the plaintiffs contend that wearing smocks is (a) required by Butterball, (b) necessary for the employee to perform his or her duties, and (c) primarily for the benefit of Butterball.  "An act is necessary to a principal activity if that act is required by law, by company policy, or by the nature of the work performed." *Perez v. Mountaire Farms, Inc.*, Nos. 09-1917 and 09-1966, 2011 WL 2207110, at *7 (4th Cir. Jun. 7, 2011) (citing *Alvarez*, 339 F.3d at 903).  Here, the parties have stipulated that Butterball, pursuant to its Good Manufacturing Processes, requires employees to don and doff smocks; thus, donning and doffing

---

[3]George ("Bill") Folk, Butterball's Complex Manager at the Huntsville Plant; Jim Gilbert, Butterball's Safety Manager at the Huntsville plant; and Heath Hula, Butterball's Plant Manager at the Ozark plant all testified that employees wear smocks primarily for food safety.  Gary Lenaghan, Butterball's Vice President of Human Resources, testified that one of the benefits of the smocks is food safety, although he also argued that the smocks keep employees warm and dry.  (Pls.' Stip. Facts ¶ 75, *Helmert* ECF No. 361.)

smocks also are necessary for the employees to perform their duties.  The only question left to resolve, then, is whether the donning and doffing primarily benefit Butterball.[4]

As evidenced by Butterball's training materials, Butterball's handbook, and the deposition testimony of Butterball managers, the smocks' primary purpose—and the reason Butterball requires them—is food safety.  Although smocks also help protect employees' clothes, it cannot reasonably be denied that donning and doffing smocks primarily benefit Butterball.  As Judge Trauger has explained:

> The defendants do not dispute that the purpose of the frock is to maintain sanitary conditions on the production floor and to prevent the defendants' product from becoming contaminated. The defendants argue, however, that the frocks also benefit the plaintiffs by keeping their street clothes from becoming dirty. Though it is perhaps the case that the frocks provide a benefit to the plaintiffs, that does not alter the fact that the reason the defendants require their employees to wear frocks is motivated not by the employees' needs, but rather by the defendants' need to maintain a sanitary production floor. Moreover, although the frocks are not specifically required by federal law, their use enables the defendants to meet federal regulations requiring employees to wear clean garments and the company to maintain hygienic practices on the production floor. Additionally, the court is unpersuaded by a recent district court ruling on which the defendants rely (Docket No. 258), in which the plaintiffs' summary judgment motion was denied on the grounds that there were factual questions as to whether the employer reaped the "primary benefit" of donning and doffing, though it was clear that the employer reaped "some benefit." *Chao v.*

---

[4]The plaintiffs argue that the question is not whether the activity primarily benefits Butterball, but whether it provides any benefit to Butterball.  This Court disagrees.  *See Helmert v. Butterball, LLC*, No. 4:08CV00342, 2009 WL 5066759, *11 (E.D. Ark. Dec. 15, 2009).  The plaintiffs rely on one unpublished Eighth Circuit opinion for the proposition that an activity is compensable as a matter of law if it provides any benefit to the employer.  In that case, the employer argued that its foremen should not be compensated for time spent driving between job sites.  *Herman v. Rich Kramer Const., Inc.*, No. 97-4308WMS, 1998 WL 664622 (8th Cir. Sept. 21, 1998).  The Eighth Circuit cursorily stated that travel time between sites was compensable because the employer "could not have constructed buildings without the tools, supplies, and employees transported by foremen.  Although providing trucks may have been convenient for the foremen, it also benefitted [the employer]."  *Id.* at *2 (internal citation omitted).  This Court is not convinced that *Herman* stands for the proposition that an employer need only derive some—but not the primary—benefit from an activity for it to be compensable.

*Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, slip op. at 24-27 (N.D. Ala. Jan. 22, 2008). The fact is that the frocks enable the defendants to maintain the cleanliness of their facilities and prevent their product from becoming contaminated. This benefit is enormous when one considers the damage that would result to the defendants if they were to sell a contaminated food product. The minor benefit to the employees of keeping their street clothes clean pales by comparison. As such, there is no question that, as a matter of law, it is the defendants who reap not only *some* benefit from the donning and doffing of the frocks, but the *primary* benefit of doing so.

*Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 807 (M.D. Tenn. 2008) (emphasis in original). Food safety is, or should be, the paramount concern in every facility that processes meat. As Judge Trauger notes, federal regulations require production employees to wear clean garments at the beginning of each day and to change as often as necessary to prevent food contamination.[5] Butterball's Good Manufacturing Processes—including the requirements that an employee don a clean smock onsite at the beginning of each day and doff the smock onsite for cleaning at the end of each day—are designed to address the paramount concern of food safety and to comply with federal regulations. No reasonable jury could find that an activity essential to prevent food contamination in a poultry processing plant primarily benefits the employees of the plant rather than the employer. *See Perez*, 2011 WL 2207110, at *8 (because of the importance of protective gear in ensuring the safety and sanitation of chicken processing, donning and doffing primarily benefit the employer); *Franklin v. Kellogg Co.*, 619 F.3d 604, 620 (6th Cir. 2010) ("[B]ecause the uniform and equipment ensures sanitary working conditions and untainted products," donning and doffing primarily benefit the employer.); *Ballaris*, 370 F.3d at 911 (donning and doffing uniforms held compensable because the uniforms were necessary to limit contamination and to ensure the quality of the product); *Hoyt v. Ellsworth Co-op. Creamery*, 579 F. Supp. 2d 1132, 1141 (W.D. Wis. 2008) (donning and doffing

---

[5]*See* 9 C.F.R. § 416.5 (2011).

10

"safety/sanitary uniforms" held integral and indispensable to principal activities as a matter of law); *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860, 865 (W.D. Wis. 2007) ("After *Alvarez*, there can be little doubt that donning and doffing protective gear at the beginning and end of the workday are 'principal activities' under the Portal-To-Portal Act.").

Based on the stipulated facts, the plaintiffs are entitled to summary judgment on the claim that donning and doffing of smocks by production employees at Butterball's Huntsville and Ozark plants are integral and indispensable to the principal activities of those employees. Consequently, donning and doffing of smocks by those employees are not excluded from compensation under the FLSA by the Portal-To-Portal Act.[6]

The plaintiffs have also requested the Court to rule on several hypothetical questions, urging that a ruling on those questions would assist the parties in reaching a settlement, but the Court declines to give an advisory opinion answering hypothetical questions. *Cf. Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461, 464, 81 L. Ed. 2d 617 (1937) (distinguishing a justiciable controversy from "an opinion advising what the law would be upon a hypothetical state of facts"); *State of Minn. v. U.S. Steel Corp.*, 438 F.2d 1380, 1384 (8th Cir. 1971) (refusing to address issues not yet ripe even though doing so might hasten settlement and avoid lengthy, expensive litigation). Therefore, the plaintiffs' motion for partial summary judgment is granted in part and denied in part.

---

[6]Any defense asserted by Butterball, such as the *de minimis* defense or any one other than the issue of whether donning and doffing smocks is integral and indispensable to production employees' principal activities, is not addressed here. *Cf. Helmert v. Butterball*, No. 4:08CV00342, 2010 WL 3397373 (E.D. Ark. Aug. 25, 2010).

## IV.

It is undisputed that Butterball compensates its employees for six minutes per day for donning and doffing, regardless of the amount of time that the employees actually spend doing so. Butterball contends that the six minutes per day is a reasonable amount of time for donning and doffing.[7]  Butterball refers to this mode of payment as "plug time."  In its motion for summary judgment, Butterball asks the Court to dismiss all of the plaintiffs' claims for time other than a fixed, reasonable amount of time to conduct donning-and-doffing-related activities.  In other words, Butterball asks the Court to determine as a matter of law that a plug time method of payment complies with the FLSA and the Arkansas Minimum Wage Act.[8]  The Court declines to do so.

It is clear from the Supreme Court's decision in *Alvarez* that employers are to record and pay employees for actual hours worked—in other words, all of the time between an employee's first principal activity and last principal activity that is not otherwise excluded under the Act.[9]  *See supra*

_____

[7]As noted above in footnote 1, Butterball's production employees don and doff several items of personal protective equipment, not just smocks, each day.

[8]The defendants draw no distinction between the FLSA and the Arkansas Minimum Wage Act, and the Arkansas Minimum Wage Act appears to impose the same overtime requirements as the FLSA.  *See Phillips v. Pine Bluff*, No. 5:07CV00207, 2008 WL 2351036, at *5 (E.D. Ark. Jun. 4, 2008) ("It does not appear . . . that the Arkansas statute imposes a requirement different from that imposed by the Fair Labor Standards Act.").  In fact, the Arkansas Department of Labor "may rely on the interpretations of the U.S. Department of Labor and federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of [the Arkansas Minimum Wage Act] . . . except to the extent a different interpretation is clearly required."  010.14.1 Ark. Code R. § 112.

[9]Under the recording requirements of the FLSA, employers must "maintain and preserve payroll or other records containing . . . [h]ours worked each workday and total hours worked each workweek . . . ."  29 C.F.R. § 516.2 (2011).  In other words, an employer must "keep track of the working hours of each employee that falls under the Act." *Hertz v. Woodbury Cty., Iowa*, 566 F.3d 775, 779 (8th Cir. 2009) (citing 29 C.F.R. § 516.2).  In *Reich v. Cole Enterprises, Inc.*, the court held that an employer who kept a record of the shifts that its employees worked instead of

Part II; *see also Perez v. Mountaire Farms*, 610 F. Supp. 2d 499, 522 (D. Md. 2009) ("I find and conclude that any activity that occurs between the initial donning and final doffing . . . is compensable."), *aff'd in part*, 2011 WL 2207110, at *17; *see, e.g.*, *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984) (finding that a farm labor contractor who used a "picking ticket" to estimate the number of hours its employees worked violated the FLSA, "which requires employer to maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked"), *abrogated on other grounds by Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896 (3d Cir. 1991); *Wirtz v. Williams*, 369 F.2d 783, 785 (5th Cir. 1966) (determining that the employer did not comply with the overtime compensation requirements of the FLSA when the employer did not record the actual amount of time its truck drivers spent en route but rather estimated how much time each trip should take).

Butterball argues to the contrary. Butterball first contends that it may compensate employees for reasonable or average time worked rather than actual time. Butterball cites to a number of cases in which courts calculated back pay awards for employees based upon reasonable estimates of the amount of time that it took the employees to perform the compensable work at issue. *See Tum v. Barber Foods, Inc.*, 360 F.3d 275, 283 and n.7 (1st Cir. 2004) (finding no fault with a jury instruction that asked the jury how much time was "reasonably required" to perform the compensable work), *rev'd on other grounds*, *Alvarez*, 546 U.S. 21, 126 S. Ct. 514; *Reich v. IBP, Inc.*, No. 88-2171, 1996 WL 137817, at *2-3 (D. Kan. Mar. 21, 1996) (determining the reasonable

---

the exact time the employees started and stopped working each day violated these recording requirements by failing to maintain records of the *actual* hours that its employees worked. 901 F. Supp. 255, 258-60 (S.D. Ohio 1993). If the law requires that an employer record the hours that each employee works, the reason for that requirement must be that the employer must compensate the employees on the basis of those recorded hours.

estimate of time worked by the employees to calculate back pay because defendants had failed to maintain time records).  It is true that "the court may award damages to [an] employee, even though the [award] be only approximate."  *Mount Clemens,* 328 U.S. at 688, 66 S. Ct. at 1192.

> When the employer has failed to record compensable time and the employees have proved that they actually performed the work in question, the plaintiffs need only produce evidence sufficient to support a reasonable inference of the amount and extent of that work.  *Mount Clemens*, 328 U.S. at 687, 66 S. Ct. at 1192.  'The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee [s'] evidence.' *Id.* at 687-88, 66 S. Ct. at 1192-93.

*Metzler v. IBP, Inc.*, 127 F.3d 959, 965-66 (10th Cir. 1997).  In a case such as this one, it is impossible to determine the actual time that each plaintiff spent in compensable donning-and-doffing-related activities over a two or three year period when the employer failed to keep a record of that time.  *Cf. Alvarez*, 339 F.3d at 914 (upholding the district court's compensation measure based on "reasonable" time, "thereby avoiding countless individual plaintiff-specific quagmires while directing the parties to individualize the damage measure to the extent possible nevertheless").  More often than not, such awards may be based on a reasonable estimate of the time that employees were engaged in the compensable activities.[10]

However, those cases do not stand for the proposition that under the FLSA employers need not compensate employees for all of the time that they actually worked.  In *Reich v. IBP, Inc.*, the Secretary of Labor brought an action against IBP alleging that it had violated the overtime and

---

[10]Back pay based on reasonable time estimates may not be appropriate in all cases.  "[I]n certain contexts, individual traits and needs of [each employee] [may] preclude any easy determination as to what is a 'reasonable time.'  In contexts in which work tasks are not uniform and are less subject to dilatoriness, that which is 'approximate' may not always be 'reasonable.' " *Alvarez*, 339 F.3d at 915 (internal citations omitted).

recordkeeping provisions of FLSA.[11]  820 F. Supp. 1315, 1318 (D. Kan. 1993).  In the first phase

of a bifurcated trial, the district court found that employees "were entitled to compensation for

reasonable, rather than actual, time required" to don and doff protective gear.  *Jordan v. IBP, Inc.*,

No. 3:02-1132, 2004 WL 5621927, at *1 (M.D. Tenn. Oct. 12, 2004) (citing *Reich*, 820 F. Supp. at

1329).

On appeal, the Tenth Circuit affirmed the district court's conclusion that employees should

be paid on the basis of reasonable time to conduct the compensable activities rather than on the basis

of the actual time it took them to conduct the activities.  *Reich v. IBP, Inc.*, 38 F.3d 1123, 1127 (10th

Cir. 1994).  After the second phase of trial, the court concluded that a company-wide injunction was

appropriate.  *Reich v. IBP, Inc.*, Civ.A. No. 88-2171-EEO, 1996 WL 445072, at *1 (D. Kan. Jul. 30,

1996).  The injunction ordered IBP to implement within ten days recordkeeping practices that would

record the time spent by each employee in performing compensable pre-shift and post-shift activities.

*Id.*  On appeal, the Tench Circuit upheld the injunction.  *Metzler*, 127 F.3d at 965.  Discussing the

*Reich* cases, one district court opined:

> The court's method of reaching the "reasonable average" does not suggest
> that reasonable time spent in a compensable activity and actual time spent in a
> compensable activity are mutually exclusive concepts, nor does it absolve IBP from
> recording and compensating employees for actual time spent in these activities.
> Rather, the court observed that "[d]efendant will be required to record and
> compensate for time spent in compensable activities under its present working
> conditions." [citation omitted] Furthermore, the injunction explicitly states that
> "Defendant shall implement recordkeeping practices sufficient to record the time
> spent by *each* employee in performing the pre-shift and post-shift activities found to
> be compensable under the Act." (Docket No. 60, Ex. 9, Injunction ¶ 3) (emphasis

---

[11]The Secretary of Labor is authorized to seek injunctive relief under the FLSA.  *See United Food & Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc.*, 207 F.3d 1193, 1197-98 (10th Cir. 2000); *Powell v. Florida*, 132 F.3d 677, 678 (11th Cir. 1998) (collecting cases).

added).  Nowhere in the injunction does the court limit the payment to "reasonable" time, and the context of the court's pronouncements suggest[s] that the court intended employees to be paid only for "reasonable" time where the employer had not recorded actual time spent, but that, in the future, the employer was still obligated to devise a way to record and pay for the actual time spent in these activities.  For these reasons, the court is not convinced that the *Reich* injunction merely requires IBP to compensate employees for reasonable time spent in the activities as a prospective matter.

*Jordan*, 2004 WL 5621927, at *13; *see also Garcia*, 474 F. Supp. 2d at 1248 ("Other statements made by the trial court in *Reich* further suggest that the court intended defendants to compensate . . . employees for the reasonable time spent donning and doffing only until such time as defendants began recording the actual time spent by employees in performing these activities.").  Although damages may be awarded on a reasonable basis, as explained in *Jordan v. IBP, Inc.*, the FLSA requires employers to compensate their employees for actual hours worked.

Butterball also relies heavily upon a U.S. Department of Labor Field Operations Handbook that authorizes employers to "set up a formula by which employees are allowed given amounts of time to perform clothes changing and washup activities, provided the time set is reasonable in relation to the actual time required to perform such activities."  Dept. of Labor Wage and Hour Division, Field Operations Handbook § 31b01a (Sept. 19, 1996), *available at* http://www.dol.gov/whd/FOH/index.htm.  Butterball argues that the Department of Labor *provides* for plug time payments through this handbook provision and, thus, has not rejected the practice as a matter of law.  Like opinion letters, administrative handbooks do not bind the courts, though they can be persuasive.  *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999).  The handbook section cited above is unpersuasive.  First, it appears that section 31b01a is a subpart to section 31b01, which explains whether clothes changing and washup activities are compensable in the context of a collective bargaining agreement when the agreement makes no mention of the practice.

Despite the structure of the handbook sections, Butterball argues that the provision makes no sense in the context of a collective bargaining agreement because employers and unions could negotiate any amount—or no amount—of compensation for changing and washup activities; they would not be limited by any reasonableness requirement, as the section suggests.

Even if the Court were to agree with Butterball on this point, however, the section is unpersuasive for other reasons.  In January of 2001, the Administrator of the Wage and Hour Division of the Department of Labor issued an opinion letter stating that a company must record and pay for each employee's *actual* hours of work.  The letter stated that "in order to comply with the FLSA and its implementing regulations . . . a company must record and pay for each employee's *actual* hours of work . . . ." U.S. Department of Labor Wage & Hour Division, FLSA Opinion Letter, 2001 WL 58864 (Jan. 15, 2001) (emphasis added).  The letter makes clear that "the [Department of Labor] . . . [has] rejected the average time concept used by the defendant[s]." *Lopez v. Tyson Foods*, No. 8:06CV459, 2007 WL 1291101, at *3 (D. Neb. Mar. 20, 2007). The defendants argue that the opinion letter is an advisory memorandum with no legal authority.  *See Christensen v. Harris Cty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1663, 146 L. Ed. 2d 621 (2000).  Still, the letter is "entitled to respect" to the extent that it has the power to persuade.  *Id.* (citing *Skidmore*, 323 U.S. at 140, 65 S. Ct. at 164).[12]  As to its definition of the term "work" as used in the FLSA, the opinion letter is persuasive and supported by the regulations and case law.

---

[12]The defendants argue that this Court has already rejected the Department of Labor's January 15, 2001, opinion letter as unpersuasive.  (Defs.' Resp. Br. at 6, *Helmert* ECF No. 397.)  In that opinion, however, the Court addressed the plaintiffs' proposed "first touch/last touch" rule.  (Op. and Order, August 25, 2010, *Helmert* ECF No. 274).  The Court was unconvinced that, to the extent such a rule was supported by the letter, it was established by law.  That issue is not presented here.

Butterball also cites to a letter issued in 2006 to livestock slaughterhouse managers by the Food Safety Inspection Service of the United States Department of Agriculture ("USDA") in which the Department explained that, in light of *Alvarez*, the eight hours of USDA inspection service provided to slaughterhouses each day, at the USDA's expense, would be modified to include a maximum of thirty minutes for donning, doffing, and travel time from the USDA office to the post-mortem inspection station. (Defs.' S.J. Mot. Ex. I; *Helmert* ECF No. 389.)  In other words, the USDA—not the individual slaughterhouse facilities—would compensate employees for donning-and-doffing-related activities.  The Food Safety Inspection Service also proposed a rule that would amend the regulations for USDA inspections to include donning-and-doffing-related activities in the eight hours of work that the inspectors perform for slaughterhouses and that is paid for by the USDA. Changes to the Schedule of Operations Regulations, 75 Fed. Reg. 47,727 (proposed Aug. 9, 2010). If a slaughterhouse did not wish for donning-and-doffing-related activities to be included in the eight hours of work performed by the inspectors each day, then it could opt to pay the inspectors overtime for those activities.  Neither the letter nor proposed rule suggests that a plug time system of payment is lawful under the FLSA.[13]

In each of its arguments against recording and paying employees for their actual hours of work, Butterball fails to make a critical distinction: while a back pay award may be based on a reasonable estimate of the actual time spent in donning and doffing when the employer has failed

---

[13]The defendants argue that the proposed rule would calculate overtime rates based on fifteen minutes of plug time for donning-and-doffing-related activities. (Defs.' Br. in Support of Partial S.J. Mot. at 17; *Helmert* ECF No. 388.)  In fact, the proposed rule does not include a plug time method of payment; it notes that the "actual time . . . inspection personnel will take to don and doff required gear will vary in each meat and poultry slaughter establishment," but uses fifteen minutes as a reasonable estimate to calculate expected costs to the industry of paying overtime for donning-and-doffing-related activities.  75 Fed. Reg. 47,727.

to record actual time, an employer may not compensate employees based on the amount of time a reasonably efficient employee would spend donning and doffing if the actual time is greater and the result is that the compensation falls below the minimum wage and overtime requirements of the FLSA.

Finally, Butterball argues that even if employees must be compensated for actual hours spent in compensable, donning-and-doffing-related activities, the number of actual hours an employee works does not necessarily include all of the time between the employee's first and last principal activities.   In support of its argument, Butterball cites to *Anderson v. Wackenhut Corp.*, No. 5:07CV137-DCB-JMR, 2008 WL 4999160 (S.D. Miss. Nov. 19, 2008), an unpublished opinion in which the court considered whether time spent waiting is compensable as a matter of law when the waiting occurs between an employee's first and last principal activities.   The district court in *Anderson* concluded that the continuous workday doctrine alone does not make all time between an employee's first and last principal activities compensable.   2008 WL 4999160, at *6.   The court based this conclusion on the Supreme Court's holding in *Alvarez*, which it interpreted to mean that post-donning walking time is compensable not because it occurs during the continuous workday but because it primarily benefits the employer.   In fact, *Alvarez* makes clear that walking time and waiting time that occur during the continuous workday are compensable regardless whether they benefit the employer.   *Alvarez*, 546 U.S. at 40, 126 S. Ct. at 527 ("[T]he Court of Appeals was incorrect with regard to the predoffing waiting time.   Because doffing gear that is 'integral and indispensable' to employees' work is a 'principal activity' under the statute, the continuous workday rule mandates that time spent waiting to doff is . . . covered by the FLSA."); *see also Perez*, 610 F. Supp. 2d at 522 ("[D]uring a continuous work day, any walking time that occurs after the beginning

19

of the employee's first principal activity and before the end of the employee's last principal activity

is . . . covered by FLSA.").

Several of the jury instructions cited by Butterball[14] apply the continuous workday doctrine

as stated in *Alvarez* to other donning and doffing cases.  In *Solis v. Tyson Foods, Inc.*, the district

court instructed the jury that "[t]ime spent after the employee engages in the first principal activity

and before the employee finishes his or her last principal activity is part of a continuous workday and

is compensable under the Fair Labor Standards Act, unless it is otherwise excluded from

compensation . . . ."  (Defs.' S.J. Mot. Ex. B; *Helmert* ECF No. 389.)  Similarly, in *Brothers v. Tyson*

*Foods, Inc.*, the jury was instructed that the employer did not have to compensate the employee "for

any activity that was performed before she started washing items at the beginning of the work day"

or "for any activity that was performed after she completed washing and drying items at the end of

the workday."  (Defs.' S.J. Mot. Ex. D; *Helmert* ECF No. 389.)  These instructions indicate that the

continuous workday doctrine includes all of the time spent between an employee's first and last

principal activities, unless that time is otherwise excluded under the FLSA.

Butterball makes a pragmatic argument against this interpretation of the continuous workday

doctrine.  Butterball contends that, if all of the time during the continuous workday is compensable,

then an employee could arrive at the plant long before the shift begins, engage in a principal activity,

sit idly in the cafeteria until the shift begins, and then demand compensation for that time.  *See*

*Albanese v. Bergen Cty., N.J.*, 991 F. Supp. 410, 423-24 (D.N.J. 1997) (noting the concern that

employees might attempt to pad their hours or shirk their responsibilities if they are not required to

---

[14]In support of its motion, Butterball attached copies of several sets of jury instructions
given in FLSA cases.

prove that the overtime hours they worked are reasonable). Although this is a legitimate concern, it is not a basis for avoiding the continuance workday doctrine. According to the FLSA regulations,

> [I]t is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13. Butterball, as the employer, has the authority to manage its employees' continuous workday so as to avoid idle wait time. Butterball can control when its employees' arrive to and leave from the plant and the activities they engage in while at the plant. If Butterball does not want its employees to don gear before going to the cafeteria or restrooms, it can instruct them accordingly.

Although the FLSA requires employers to compensate employees for their actual hours worked, which are measured according to the continuous workday, it is yet to be determined whether the plaintiffs are entitled to any recovery. In order to recover, the plaintiffs will have to establish that they were paid less than minimum wage for any hours worked up to forty hours per week or that they were compensated at a rate less than time and a half for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). If Butterball's pay practices—including its plug time policies—meet these minimum wage and overtime requirements, then the plaintiffs will not be entitled to relief.[15] No evidence has been presented as to whether Butterball's pay practices meet these requirements, so neither party is entitled to summary judgment on this issue.

---

[15]Even if Butterball were in violation of the FLSA's recording requirement for failing to record actual hours worked, the plaintiffs would not be entitled to damages because the FLSA does not provide a private cause of action for violations of the recording requirements. *See* 29 U.S.C. §§ 211(c), 216(b).

**CONCLUSION**

For the reasons stated above, the plaintiffs' motion for partial summary judgment is GRANTED in part and DENIED in part.  The defendants' motion for partial summary judgment is DENIED.  *Helmert* ECF Nos. 367 and 387; *Garner* ECF Nos. 74 and 76.

IT IS SO ORDERED this 27th day of July, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE