# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

ROXIE GARNER, ROY GARNER, JASON                                    PLAINTIFFS
FOSTER, MIGUEL ANGUIANO ARUAJO,
CHRISTOPHER SMITH, and JOHN SNARR, on
behalf of themselves and all others similarly situated

v.                                  No. 4:10CV01025 JLH

BUTTERBALL, LLC and
GARY R. LENAGHAN                                                  DEFENDANTS

## OPINION AND ORDER

The plaintiffs bring this action on behalf of themselves and others similarly situated against

their employer, Butterball, LLC, and its officer, Gary Lenaghan, for alleged violations of the Fair

Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Minimum Wage Act of the State of Arkansas,

A.C.A. § 11-4-201 *et seq.*  Pending before the Court is the plaintiffs' motion for certification under

Rule 23 of the Federal Rules of Civil Procedure of a class seeking relief under state law, as well as

the parties' cross-motions concerning the relevant statute of limitations on those state-law claims.

For the following reasons, the motion for class certification is granted, and the parties' cross-motions

on the limitations issues are granted in part and denied in part.

## I.

In April 2008, Sheila Helmert and other former Butterball, LLC employees brought an action

against Butterball alleging violations of the Fair Labor Standards Act (FLSA) and the Minimum

Wage Act of the State of Arkansas (MWA) requirements for overtime compensation.  On

December 15, 2009, this Court conditionally certified an FLSA collective action and denied the

*Helmert* plaintiffs' motion for certification of a Rule 23 class. *Helmert* Doc. 109.[1]

---

[1]The Court will refer to documents from the *Helmert* record as "*Helmert* Doc. __" and
documents from the present record as "*Garner* Doc. __."

On July 22, 2010, more than two years after filing *Helmert*, the plaintiffs' counsel for *Helmert* filed the instant complaint as a putative class action, seeking relief under the FLSA and MWA. *Garner* Doc. 1.  The plaintiffs allege that the defendants have willfully not paid their hourly production and support employees full overtime compensation for the hours worked at Butterball's Arkansas facilities as required by the FLSA and MWA because they do not compensate hourly employees for time spent donning, doffing, sanitizing required gear and equipment, walking to and from the production floor, and other related and required duties. *Id.*

On July 27, 2011, the Court consolidated *Helmert* and *Garner* for trial.  *Helmert* Doc. 440. On September 23, 2011, the *Garner* plaintiffs filed a motion for class-action certification under Rule 23. *Garner* Doc. 108.  They proposed the following class:

> All current or former hourly-paid production employees (defined as Evisceration, Bagging/Packaging, Deboning, Boxing, Boneless Rolled Turkey (BRT), Smoke & Bake, and Traypack), who work or worked at the Butterball, LLC turkey processing plants locating in Huntsville and Ozark, Arkansas, at any time since April 18, 2005 through the date of final judgment in this action.[2]

*Garner* Doc. 109, at 5.  The defendants have opposed the motion for certification. *Garner* Doc. 116. Both parties have also filed motions for judgment concerning the relevant statute of limitations. *Garner* Docs. 113, 123.  The Court will not exhaustively recount all of the facts, as it has already issued several detailed opinions in both *Helmert* and the present case.  *See, e.g., Helmert* Docs. 109, 435; *Garner* Doc. 39.

---

[2]In late 2011, the Supreme Court of Arkansas held that a three-year statute of limitations applies to private causes of action brought under the MWA.  *Douglas v. First Student, Inc.*, --- S.W.3d ---, 2011 Ark. 463 (2011).  The plaintiffs' class request was adjusted accordingly.

## II.

To obtain class certification, the plaintiffs must meet all four requirements found in Federal Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation, as well as satisfy one of the three subsections in Rule 23(b).  The party seeking certification bears the burden of showing that certification is appropriate and Rule 23's requirements are met. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). Whether to certify a class is left to the discretion of the district court. *Id.* at 259.  According to the Eighth Circuit:

> A district court considering a motion for class certification must undertake a rigorous analysis to ensure that the requirements of Rule 23(a) are met. Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim, and the district court may resolve disputes going to the factual setting of the case if necessary to the class certification analysis. The court's factual findings with respect to the class certification question are reviewed for clear error.

*Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011) (internal citations and quotation marks omitted).

The federal district courts have certified Rule 23 classes in numerous "donning and doffing" cases involving food-processing plants, including several district courts within the Eighth Circuit. *See, e.g., Ford v. Townsends of Ark., Inc.,* No. 4:08cv00509, 2010 WL 1433455 (E.D. Ark. April 9, 2010) (certifying Rule 23 class brought against chicken processor pursuant to MWA); *Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG (W.D. Mo. Feb. 9, 2012) (similar); *Cortez v. Neb. Beef, Inc.,* 266 F.R.D. 275 (D. Neb. 2010) (similar); *Lopez v. Tyson Foods*, No. 8:06CV459, 2008 WL 3485289 (D. Neb. Aug. 7, 2008) (similar); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870 (N.D. Iowa 2008) (similar); *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434 (W.D. Wisc. 2008) (similar); *see also Martinez-Hernandez v. Butterball, LLC*, No. 5:07-CV-174-H(2), 2011 WL 4549606 (E.D.N.C. Sept. 29, 2011) (declining to decertify a Rule 23 class involving nearly identical

facts at Butterball's North Carolina plant); *Morales v. Greater Omaha Packing Co.,* No. 8:08CV88, 8:08CV161, 2011 WL 2790483 (D. Neb. July 15, 2011) (similar); *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-CV-1018, 2007 WL 2780504 (D. Minn. Sept. 24, 2007) (similar). The defendants have cited no donning and doffing cases involving food-processing plants in which a court has declined to certify a class because individualized concerns predominate common questions, which is their primary argument against certification.[3]

After thoroughly reviewing the record in this case, no material distinction appears between Butterball's Ozark and Huntsville plants and the plants in the aforementioned donning and doffing cases in which Rule 23 classes have been certified.

**A.** *The plaintiffs satisfy the requirements of Rule 23(a)*

The plaintiffs first assert that the class is so numerous that joinder of all members is impracticable, as is required by Rule 23(a)(1), because Butterball employed, as of December 2008, approximately 700 employees at its Huntsville plant and 300 employees at its Ozark plant. Butterball does not contest numerosity, and the plaintiffs have provided sufficient evidence to satisfy

---

[3]Many of the cases cited to by the defendants are completely unrelated, factually. *See, e.g., Windham v. Am. Brands, Inc.,* 565 F.2d 59 (4th Cir. 1977) (suit by tobacco growers against tobacco companies); *Pipes v. Life Investors Ins. Co. of Am.*, 254 F.R.D. 544 (E.D. Ark. 2008) (suit against insurance company alleging breach of contract and bad faith claim payment). Even the cases bearing a somewhat closer similarity, however, are distinguishable. *See e.g., Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, 2006 WL 6012784 (N.D. Ala. Nov. 15, 2006) (denial of certification under FLSA, not Rule 23; no general, nationwide policy against paying for donning/doffing); *Lugo v. Farmer's Pride, Inc.*, 737 F. Supp. 2d 291 (E.D. Pa. 2010) (decertification under FLSA, not Rule 23; different, unique pay system). Perhaps the closest example the defendants have pointed to is *Wright v. Pulaski County*, a 2010 Eastern District of Arkansas opinion authored by the Honorable Susan Wright. No. 4:09CV00065, 2010 WL 3328015 (E.D. Ark. Aug. 24, 2010). While *Wright* did concern donning and doffing, it involved the FLSA, not Rule 23, and it took place in a vastly different environment – a prison – where there were stark factual differences between employees.

their burden.  *See Belles v. Schweiker,* 720 F.2d 509, 515 (8th Cir. 1983) ("[N]o arbitrary rules regarding the necessary size of classes have been established.").

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." Commonality is satisfied when "the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.  Thus, factual differences are not fatal to maintenance of the class action if common questions of law exist." *Robinson v. Sears, Roebuck & Co.,* 111 F. Supp. 2d 1101, 1120 (E.D. Ark. 2000) (internal citations and quotation marks omitted).  The existence of a single common issue is sufficient to establish commonality.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556, 180 L. Ed. 2d 374 (2011).

The plaintiffs argue that this case is unavoidably identical to *Helmert*, where this Court stated that "the plaintiffs have demonstrated that there is a common question of law shared among the members of the proposed class: whether employees must be compensated for donning-and-doffing-related activities." *Helmert* Doc. 109, at 15.[4]  While the defendants respond by accurately noting that all of the proposed class members are or were not paid on the same exact pay system,[5] this does not change the fact that the plaintiffs have demonstrated, much like in *Helmert*, that the aforementioned common question of law still exists.  The record demonstrates that,

---

[4]The plaintiffs provide a list of other questions of law and fact that they argue are common to the entire class. *Garner* Doc. 109, at 11.  Because the Court finds the first question sufficient, it does not address the others.

[5]Butterball pays most of its on-line production employees in the Huntsville and Ozark facilities on a system known as "line time," "gang time," or "scheduled time," in which work time is measured either from the time the first turkey passes a particular point on the production line or a pre-scheduled start time until the time the last turkey passes the same point.  A small minority of employees are paid based on when they punch in and out with their time cards.

until very recently,[6] all Butterball production employees – regardless of pay system – received two thirty-minute unpaid breaks per work day and donned and doffed various sanitary and personal protection items during these breaks.[7]  Thus, regardless of their pay system, all of the proposed class members share a common question – should they be paid for this off-the-clock donning and doffing?

Rule 23(a)(3)'s "typicality provision requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff."  *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977).  The Court "must be shown that the representative is not alone in his or her dissatisfaction with the employer's unlawful practices so as 'to assure that there is in fact a class needing representation.'" *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (quoting *Donaldson*, 554 F.2d at 830).  The burden of showing typicality requires something more than general conclusory allegations, *id.*, but it "is fairly easily met so long as other class members have claims similar to the named plaintiff."  *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).  Typicality normally does not require factual exactness as long as "the claim arises out of the same legal or remedial theory . . . ."  *Donaldson*, 554 F.2d at 831.

---

[6]On August 29, 2011, Butterball initiated changes to its break policy at the Huntsville and Ozark plants due to federal regulation changes.  Now, each production employee in every department is required to take two breaks of thirty-three minutes in length, running from the time the employee leaves the production line until the time the employee returns to the production line.  These employees are now paid three minutes during each break to take off and put back on their equipment, walk to an from the production line, and sanitize themselves.

[7]*See Helmert* Doc. No. 361, at paras. 12-18 (party stipulations that Butterball provided two unpaid breaks per shift to all production employees and that some employees engaged in donning/doffing-related activities during those breaks); *Garner* Doc. 109-60, at 16, 20 (noting that Huntsville and Ozark facilities allowed two thirty-minute unpaid breaks per day); *Garner* Doc. 109-17, at 4 (named plaintiff Roy Garner, a punch-to-punch employee, testifying that during his two daily breaks he would doff his equipment and wash his hands).

The plaintiffs here seek, among other things, prospective relief requiring Butterball to take future actions vis-à-vis its employees at the Ozark and Huntsville facilities. Specifically, the plaintiffs seek "[a] declaratory judgment that the practices complained of . . . are unlawful under Arkansas law," as well as "[a]ppropriate equitable and injunctive relief to remedy Defendants' violations of Arkansas law, including but not necessarily limited to an order enjoining Defendants from continuing their unlawful practices." *Garner* Doc. 1, at 17. In *Helmert*, the Court found that none of the named plaintiffs was currently employed by Butterball, so they lacked standing to seek prospective relief and therefore did not meet the typicality or adequacy requirements. *Helmert* Doc. 109, at 18. The same problem does not arise in the present action, however, as four of the remaining six named plaintiffs are current Butterball employees. Also, numerous other employees have testified that they have been denied pay for time spent on donning and doffing-related activities while working at Butterball. The testimony of these employees is sufficient to demonstrate the typicality of the named plaintiffs' grievances. *See Paxton*, 688 F.2d at 562.

Rule 23(a)(4)'s adequate representation inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63. The defendants do not contest the second prong; nor does there appear to be any reason to do so, as the plaintiffs have "indicated a willingness to prosecute their claims through qualified counsel." *Ford,* 2010 WL 1433455 at *9. The defendants only contest the first prong inasmuch as they again argue that the variety of Butterball pay systems precludes a

commonality or common interests finding. For the same reasons as listed above, that argument fails. Rule 23(a)(4)'s adequacy requirement has been fulfilled.

**B.**    *The plaintiffs satisfy the requirements of Rule 23(b)(3)*

The plaintiffs move for certification under Rule 23(b)(3), which requires two findings: (1) that common issues predominate over individual issues, and (2) that a class action be superior to other available methods for the fair and efficient adjudication of the controversy.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623, 117 S. Ct. at 2249. In analyzing predominance, a "court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs['] general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005). The plaintiffs contend that they will rely on overwhelmingly common evidence to establish their MWA claims; namely, evidence that the defendants' common policy was not to pay Butterball employees fully for donning and doffing-related activities. The plaintiffs admit that there are many individual differences between the employees, but they assert that these differences will go to damages, and not liability, therefore avoiding predominance issues.

To make a prima facie case, the plaintiffs will need to demonstrate that they all perform work which goes unpaid under the company's general pay policy, such as the time they spend on donning and doffing-related activities. In other words, regardless of individual differences, common evidence that Butterball's payment policy "cannot account for even the basic or standard [equipment] employees need to don, doff, and clean would establish a prima facie case for the class." *Bouaphakeo*, 564 F. Supp. 2d at 909. The plaintiffs have met this burden. The record is relatively clear that, regardless of pay system differences, virtually every production employee spent or spends

8

a significant amount of time on donning and doffing-related activities per day during unpaid breaks – an amount greater than what is allegedly covered by existing compensation.[8]  Thus, the question of individual differences will only arise *after* the plaintiffs have made a prima facie case, with common evidence, that they should all be compensated for donning and doffing-related activities, and it will only arise in the context of determining damages for each individual plaintiff.  This is not sufficient to show that individual issues will predominate, as "the cases are legion in which courts have rejected arguments that differences in damages among the class members should preclude class certification." *Blihovde v. St. Croix Cnty.*, 219 F.R.D. 607, 621 (W.D. Wis. 2003).[9]

The defendants vehemently disagree, however, and argue, among other things, that individualized issues go to liability rather than damages because some plaintiffs have never worked more than forty hours in a week and are therefore not entitled to recovery.  While many employees frequently work less than forty hours a week, the evidence establishes that most, if not all production employees work more than forty hours a week during "Fresh Season" – a roughly month-long period surrounding Thanksgiving.  Therefore, if the aforementioned "plug time" indeed does not fully compensate Butterball's production employees for time spent donning and doffing, every production employee will be entitled to additional overtime pay at least during the "Fresh Season."

---

[8]In early 2008, Butterball began paying Huntsville and Ozark employees six minutes extra per day ("plug time") for donning and doffing-related activities.  In every deposition the Court has been pointed to, however, in *Helmert* or *Garner*, employees have testified to spending at least fourteen minutes per day on donning and doffing-related activities, if not much more, during breaks alone.

[9]Admittedly, individual damages are a "factor in the predominance analysis," as the "need for individualized damages proof can support or contribute to a finding that the common issues do not predominate."  Steven S. Gensler, 1 Federal Rules of Civil Procedure: Rules and Commentary Rule 23, at 414 (2011), *available at* Westlaw FRCP-RC Rule 23.  Historically, however, "courts have held that the need for individualized proof of damages does not, by itself, preclude a finding of predominance." *Id.* at 413-14.  Such is the case here.

In determining whether a class action is the superior method for adjudication, a court looks at four factors: (1) the class members' interest in individually controlling their separate actions; (2) the extent and nature of existing litigation by class members concerning the same claims; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing the class definition.  Fed. R. Civ. P. 23(b)(3).

Based on these four factors, a class action is a superior method for adjudication in the present case.  First, class members would have very little interest in individually controlling their separate actions here, considering the likely high costs and low gains to be had from pursuing an individual claim.[10]  Second, the companion *Helmert* litigation – the only related litigation of which the Court is aware – counsels toward certification, as certification would resolve all currently-pending litigation in one trial.  Third, it is desirable to concentrate the litigation of these claims in one forum. Finally, while there may be difficulties in managing the class, those difficulties do not overcome the other factors and the finding of predominance.

The defendants argue, nonetheless, that the Court should decline to certify because an FLSA collective action and a Rule 23 class action are "inherently incompatible," as allowing the plaintiffs to pursue both at the same time would nullify the congressional intent behind the FLSA.  The FLSA contains an express opt-in requirement, by which potential class members are excluded unless they consent in writing to join the action.  29 U.S.C. § 216(b).  That opt-in requirement is contrary to Rule 23(b)(3)'s opt-out requirement, which requires class members expressly to opt-out of the class in order to avoid being included.  Allowing both clams to be brought together would cause the

---

[10]Rule 23(b)(3), in general, "was expected to be particularly helpful in enabling numerous person who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1777, at 115 (3d ed. 2005).

number of plaintiffs in the lawsuit to be "multiplied tenfold," the defendants assert, thus making the state claim predominate the federal claim. While federal courts have split over the "inherent incompatibility" doctrine, and while the Eighth Circuit has yet to rule, an overwhelming majority of district judges in the Eighth Circuit have held that a Rule 23 class action and an FLSA collective action are not inherently incompatible. *See, e.g., Ondes v. Monsanto Co.*, No. 4:11CV197, 2011 WL 6152858, *8 (E.D. Mo. Dec. 12, 2011) (finding no inherent incompatibility); *Arnold v. DIRECTV, Inc.*, No. 4:10CV00352, 2011 WL 839636, *8 (E.D. Mo. March 07, 2011) (noting that the "weight of authority hold[s] that [a Rule 23 and FLSA claim] can proceed together in one action"); *Cortez*, 266 F.R.D. at 284 (similar); *Robertson v. LTS Mgmt. Servs. LLC*, 642 F. Supp. 2d 922, 928-29 (W.D. Mo. 2008) (similar)*; Bouaphakeo*, 564 F. Supp. 2d at 886-89 (similar); *Osby v. Citigroup, Inc.*, No. 07-cv-06085, 2008 WL 2074102, n.2 (W.D. Mo. May 14, 2008) ("District court cases permitting FLSA collective actions to proceed simultaneously with Rule 23 state actions are legion."); *Salazar v. Agriprocessors, Inc.*, 527 F. Supp. 2d 873 (N.D. Iowa 2007) (similar); *Frank v. Gold'n Plump Poultry, Inc.*, No. Civ. 041018, 2005 WL 2240336, *5 (D. Minn. 2005) (noting that "courts routinely certify FLSA opt-in classes and Rule 23 opt-out classes in the same action"). *But see Harden v. WIS Holding Corp.*, No. 07-4076-CV-C-SOW, 2007 WL 7290307 (W.D. Mo. June 27, 2007) (finding inherent incompatibility). The conclusion of these courts is also in line with four out of the five courts of appeal to consider the issue. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247-50 (2nd Cir. 2011) (declining to find inherent incompatibility through a 28 U.S.C. § 1367(c)(4) analysis); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971 (7th Cir. 2011) (declining to find incompatibility, primarily through a Rule 23(b)(3) analysis), *and Lindsay v. Gov. Emps. Ins. Co.*, 448 F.3d 416, 424-25 (D.C. Cir. 2006) (declining to find incompatibility, primarily through a § 1367(a)

11

analysis).[11]  *But see De Asencio v. Tyson Foods*, 342 F.3d 301, 307-12 (3rd Cir. 2003) (using a

§ 1367(c) analysis to dismiss a Rule 23 class action, in part due to incompatibility).  Thus, the weight

of authority in the circuits and in the district courts of this circuit rejects the notion that a Rule 23

state-law class is inherently incompatible with an FLSA collective action in the same action.  This

Court will follow that weight of authority.[12]

The plaintiffs also move for certification under Rule 23(b)(2).  As the Court will certify the

plaintiffs under Rule 23(b)(3), it need not address the issue.  The plaintiffs have demonstrated the

necessary requisites for class certification under Rule 23.  Their motion will be granted.

## III.

The defendants have moved for judgment on the pleadings concerning the relevant statute

of limitations for the plaintiffs' MWA claims.  The plaintiffs have responded and have filed a cross-

motion for summary judgment concerning essentially the same issues.  The defendants argue that

the plaintiffs cannot recover from any earlier than three years preceding the date of their filing of the

present case, which would be July 22, 2007.  The plaintiffs assert that *American Pipe & Construction

Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), and its progeny permit a tolling

of the statute of limitations in conjunction with the class action filing of *Helmert*, which would mean

that the plaintiffs could recover as far back as April 18, 2005.

---

[11]In *Wang v. Chinese Daily News, Inc.*, the Ninth Circuit held that Rule 23 class actions and
FLSA collective actions were not incompatible under a § 1367 analysis. 623 F.3d 743, 761-62 (9th
Cir. 2010). *Wang* was later vacated without opinion, however. 132 S. Ct. 74, 181 L. Ed. 2d 1 (2011).

[12]While I am not fully persuaded by the reasoning of these cases, neither am I so convinced
by the contrary arguments that I am willing to impose on this action a result different from the result
that would be obtained in virtually any other district in this circuit.

Arkansas has adopted the *American Pipe* rule.  *See Blaylock v. Shearson Lehman Bros., Inc.*, 330 Ark. 620, 624, 954 S.W.2d 939, 941 (1997) (citing *American Pipe* for the proposition that "the commencement of a class action tolls the running of the statute [of limitations] as to purported members of the class during the pendency of the litigation").[13]  "Whether the *American Pipe* rule applies to subsequent class actions, however, depends on the reasons for the denial of certification of the predecessor action." *Great Plains*, 492 F.3d at 997.  While *American Pipe* does not apply if the previous certification was denied "for a reason that would be equally applicable to any later suit," such as lack of numerosity or predominance of individual issues, it does apply "if the reason why class certification is denied in the first suit is that the plaintiff was not an appropriate class representative." *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560, 564 (7th Cir. 2011); *see also Great Plains*, 492 F.3d at 997 ("[W]here class certification has been denied solely on the basis of the lead plaintiffs' deficiencies ... not because of the suitability of the claims for class treatment, *American Pipe* tolling applies to subsequent class actions.") (quoting *Yang v. Odom*, 392 F.3d 97, 111 (3rd Cir. 2004)).  This Court denied class certification under Rule 23 in *Helmert* because the named plaintiffs were not typical of or adequate representatives for the class, as they lacked standing to seek injunctive relief.  As the above Rule 23 analysis and ruling in favor of certification has shown, this was not a reason "equally applicable to any later suit."  Thus, *American Pipe* applies and the statute of limitations was tolled by *Helmert*.[14]  Under Arkansas's "savings

---

[13]Arkansas law controls the issue at hand.  *See Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 611 (8th Cir. 1995) ("Generally, in federal courts the limitations provisions of the forum state apply where the issue is not governed by federal statute."). *Cf. Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986 (8th Cir. 2007) (applying Kansas class-action law to a similar tolling question in a diversity jurisdiction setting).

[14]The parties agree, however, that the statute will not be tolled in regards to individual defendant Lenaghan, as he was not named as a defendant in *Helmert*.  Any recovery against him will

statute," this tolling gave the plaintiffs one year after certification was denied in *Helmert* – until Dec. 15, 2010 – to commence a new action and receive the full protection of *Helmert*. *See* A.C.A. § 16-56-126 (1985).  The plaintiffs filed the present action on July 10, 2010, therefore they will receive the maximum benefit of the tolling, with the following important caveat.

The plaintiffs cannot recover from any further back than October 1, 2006, because prior to October 1, 2006, employers such as Butterball were exempt from the MWA if they were subject to the minimum wage and overtime provisions of the FLSA. *See* 2006 Ark. Laws 1st Ex. Sess. Act. 16, at 3 (H.B. 1033) (eliminating this exemption); *see also Garner* Doc. 116-19, at 4 (Arkansas DOL General Counsel Denise Oxley: "[P]rior to the amendments in October of 2006, [the MWA] contained a specific exemption for employers covered by the [FLSA].").[15]  It is undisputed that Butterball was subject to the FLSA before October 1, 2006, so it was exempt from the MWA. Butterball cannot be liable for damages under the MWA before October 1, 2006, because the amendments created a new obligation and were therefore not remedial.  *See Helmert* Doc. 109 at 28 ("Arkansas courts observe a strict rule of statutory construction against retroactive operation of statutes."); *Sewell v. Phillips Petrol. Co.*, 197 F. Supp. 2d 1160, 1171 (W.D. Ark. 2002) (quoting the Arkansas Supreme Court for the proposition that retroactive application is not appropriate if new obligations are created).  *American Pipe* applies to Butterball, but the plaintiffs will be limited in any recovery under the MWA to October 1, 2006.

---

be limited to post-July 22, 2007, activities.

[15]Based on this evidence, both parties now concede that Butterball was exempt from the MWA prior to Oct. 1, 2006, and the Court acknowledges that its earlier ruling on this point was incorrect to the extent that it contradicts the current finding.  *See Helmert* Doc. 109, at 27-30.

**CONCLUSION**

For the reasons stated above, the plaintiffs' motion for class action certification under Rule 23 is GRANTED. *Garner* Doc. 108. The Court certifies the proposed Rule 23 class, amended as appropriate in regards to the above analysis. The Rule 23 class includes:

> All current or former hourly-paid production employees (defined as Evisceration, Bagging/Packaging, Deboning, Boxing, Boneless Rolled Turkey (BRT), Smoke & Bake, and Traypack), who work or worked at the Butterball, LLC turkey processing plants locating in Huntsville and Ozark, Arkansas, at any time since October 1, 2006, through the date of final judgment in this action.

The Court names Roxie Garner, Roy Garner, Jason Foster, Miguel Araujo, John Snarr, and Christopher Smith as class representatives and appoints plaintiffs' counsel as class counsel.[16]

Both the defendants' motion for judgment on the pleadings and the plaintiffs' cross-motion for summary judgment are DENIED in part and GRANTED in part. *Garner* Docs. 113, 122. The Court denies the defendants' motion and grants the plaintiffs' motion concerning a tolling of the MWA statute of limitations. The Court grants the defendants' motion and denies the plaintiffs' motion concerning the retroactivity of the MWA claims.

The Court has also reviewed the plaintiffs' proposed Notice Plan, which the defendants have not opposed, and it adopts the plan as follows:

1.     **Methods of Notice**. The plaintiffs' request for Rule 23 notice to current and former employees of the defendants via mail, plant posting, and published notice is GRANTED.

---

[16]The plaintiffs concede that James Rollins no longer seeks to become a class representative. Thus, his name shall be removed from the docket.

2.      **Form of Mailed Notice**. The plaintiffs' request to send their proposed mailed notice [*Garner* Doc. 109-63] is GRANTED, with the understanding that the relevant dates will be changed to conform with this opinion.[17]

3.      **Translation of Mailed Notice**. Plaintiffs shall be allowed to translate the mailed notice in Spanish and disseminate it along with the Court-approved English version of mailed notice.

4.      **Production of Updated Class List**. Within fourteen days of the date of this Order, the defendants shall provide an updated "Class List" containing the last known names, addresses, phone numbers, social security numbers, and other contact information for all individuals who are a part of the Rule 23 class as defined above. The Class List shall be produced to the plaintiffs' counsel in an electronic format that can be used to create a mail merge. Counsel for the parties will promptly meet and confer regarding the format and substance of the data provided. The plaintiffs' counsel will issue mailed notice within ten days of the receipt of the data. Social security numbers shall be kept confidential by the parties, but may be used by the plaintiffs to locate former employees with incorrect addresses.

5.      **Form of Plant Posting**. The plaintiffs' request that the defendants post the proposed plant posting [*Garner* Doc. 109-64] at the defendants' turkey processing facilities located in Ozark and Huntsville, Arkansas, is GRANTED, with the understanding that the relevant dates will be changed to conform with this opinion.  The defendants shall post English and Spanish versions of the plant posting at the Ozark and Huntsville plants for ninety days beginning from the date the mailed notice is mailed to putative Class Members. The notice shall be displayed on bulletin boards commonly used for legal notices to employees.

---

[17]The Court also notes that named plaintiff Roy Garner has been incorrectly left out of the sub-section titled "What is a Class Action and Who is Involved?"

6.      **Form of Published Notice**. The plaintiffs' request to issue published notice [*Garner* Doc. 109-65] in local media is GRANTED, with the understanding that the relevant dates will be changed to conform with this opinion.  The plaintiffs shall be allowed to run published notice in English and Spanish in the following newspapers: La Prensa, The Madison County Record, Hola Arkansas, El Latino, The Arkansas Times, The Charleston Express, and The Ozark Spectator.

IT IS SO ORDERED this 22nd day of February, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE